IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

GERALD VAN ERT, JR.,

                      Plaintiff,

  v.

CHIPPEWA VALLEY TECHNICAL COLLEGE,

                      Defendant.

OPINION and ORDER

21-cv-549-jdp

---

Plaintiff Gerald Van Ert alleges that Chippewa Valley Technical College discriminated against him because he was disabled. Van Ert began working at the college in 2013, first as a part-time fire instructor and, starting in 2015, as the school's full-time fire safety center coordinator. In 2018, the college eliminated Van Ert's position as part of a restructuring and encouraged him to apply for a newly created position that shared some duties with his old job. Van Ert applied for the new position but was not hired. The college then offered Van Ert a part-time position as a fire services technician, which he accepted and held until he resigned in 2020. Van Ert contends that he is disabled, and he is suing the college under the Rehabilitation Act on the grounds that the college discriminated against him based on his disability when it chose not to hire him into the new position, and when it demoted him to fire services technician.

The college moves for summary judgment. The college contends that the committee overseeing the hiring process was unaware of Van Ert's purported disability and so could not have acted with a discriminatory motive. And, regardless, the school had legitimate, non-discriminatory reasons for its actions. Specifically, the school contends that Van Ert's interview demonstrated that he lacked traits required for the new position, including a commitment to

valuing diversity and an ability to communicate effectively. Van Ert counters that the committee knew that he was disabled and that the committee's justifications are pretextual.

The court will grant the motion. Van Ert has identified no evidence to show that the committee members knew the Van Ert had any specific disability. And, even if they did, Van Ert has not adduced evidence from which a reasonable jury could find that the college treated Van Ert as it did for any discriminatory reason.

BACKGROUND

The following facts are drawn from the parties' proposed findings of fact and supporting evidence and are undisputed unless otherwise noted.

Before he worked at the college, Van Ert served in the army as a medic. During his service, he sustained injuries that caused him to experience chronic headaches, dizziness, difficulty maintaining balance, hearing loss, and an unspecified cognitive impairment (Van Ert doesn't explain the nature of the impairment). Dkt. 28, ¶ 6.

In 2013, Van Ert was hired as a part-time adjunct fire safety instructor at the college. Two years later, he applied for and was hired into a full-time position as the school's fire safety center coordinator. In that role, Van Ert reported to the head of the school's fire service instruction department, Chris McHenry.

In 2017, Van Ert acquired a service dog named Bonnie. After he got Bonnie, Van Ert submitted a request to the college's human resources department asking to bring Bonnie to work as a reasonable accommodation for a disability. On the request form, Van Ert described his disability as consisting of "dizziness, cognitive issues, balance dysfunction, headaches, [and] multiple mild traumatic brain injuries with central vestibular dysfunction." Dkt. 29, ¶ 5. Van

Ert said that Bonnie helped prevent falls and decrease other symptoms. The college granted Van Ert's request.

In 2018, McHenry resigned from the college. Following his departure, the school decided to restructure its emergency services programs. As part of the restructuring, the college eliminated the fire safety center coordinator position held by Van Ert and created a new full-time position, the emergency services continuing education coordinator. The new position incorporated many of the fire safety center coordinator's duties, but it also added others relating to the school's emergency medical continuing education programs.

The college posted a call for applications for the emergency services coordinator position in July 2018. The posting described the position as a leadership role whose "Required Knowledge, Skills and Abilities" included:

- Ability to value diversity by recognizing personal bias, adapting to culturally diverse situations, and demonstrating a commitment to equity, inclusion, and respectful interactions with persons of diverse ethnic, cultural, social-economic, or educational backgrounds.

- Ability to communicate effectively by speaking and writing clearly, concisely, and professionally; practicing active listening; reading critically and adapting communication for audience.

*Id.*, ¶ 15.

Van Ert applied for the emergency services coordinator position. The college invited Van Ert and three other applicants to interview for the job. One-hour interviews were conducted by a committee of five individuals who worked for or were affiliated with the college: Shelly Olson, Jack Baus, Kasondra Mero, Carmen Peterson, and Kendra Weber. The interviews had three parts: questions from the committee, a presentation by the candidate, and time for the candidate to ask questions of the committee. The interview questions were prepared in

3

advance and written on a rubric document that was given to each committee member. The committee members took notes on the rubric document for each candidate.

Van Ert didn't bring Bonnie to his interview, and there was no discussion before, during, or after the interview about whether he had a disability. The committee members' notes from Van Ert's interview show that the committee credited his extensive emergency services experience but had serious concerns about his commitment to valuing diversity. One interview question stated: "One of [the college's] core abilities is to value diversity. Please tell us what diversity means to you and give us an example from your past work experience that demonstrates your commitment to valuing diversity in the workplace." *Id.*, ¶ 33. When he responded, Van Ert said that the question was "always a hard one for fire to answer," referred to a candidate as "very Hispanic" with a "very heavy accent," and discussed that some people are "slow learners." *Id.*, ¶ 50. Committee members Weber, Baus, Olson, and Mero also noted that during the interview Van Ert referred to the fire service as a "Brotherhood" and mentioned that members of the fire and emergency medical services have "wives," which the committee members took to indicate biased views against women in the field. *Id.*, ¶ 49. And at least one committee member, Mero, was aware of a 2018 incident preceding the interview in which Van Ert was informally reprimanded by his supervisors at the college for making an inappropriate comment to two female colleagues—asking them, "which one of you will be the next to get knocked up?" Dkt. 28, ¶ 22.

The committee also noted concerns about Van Ert's communication skills, and specifically his ability to communicate professionally and listen effectively. Another interview question stated: "Tell us about a time when effective listening skills helped you in a problematic situation." Dkt. 29, ¶ 32. Committee members Weber, Mero, and Olson wrote that Van Ert's

4

response to this question discussed how he solved a problem but didn't illustrate how effective listening skills accomplished that goal. Weber also noted that Van Ert took an unusually long time to respond to the listening question, writing in her rubric that there was a "[p]ause" before Van Ert responded. *Id.*, ¶ 43. As an example of Van Ert's ineffective listening and unprofessional communication during the interview, Olson wrote that after Van Ert gave his presentation, he was asked twice by the committee to have a seat and if he had any questions, but Van Ert instead stated that he wanted to add more information and began discussing revenue figures relevant to his previous position. Committee member Baus also wrote that Van Ert several times made comments like "Blah blah blah" when answering questions, which Baus perceived as "demeaning to what should be important concerns or information of, or to others." *Id.*, ¶ 46.

After Van Ert's interview, the committee met to discuss their thoughts on his performance. A college employee, Lisa Vanasse, attended that meeting and compiled the committee's comments about Van Ert, known as "Red" to his colleagues:

> Gerald (Red) – showed that he didn't/doesn't listen . . . didn't listen during the interview; showed bias in his answer to the diversity question and have seen this with him in the past; not a good listener; can be demeaning when what someone else is saying isn't important to him, doesn't value others' knowledge; referred to emergency services workers as having wives . . . not considering there are females in the field.

*Id.*, ¶ 40 (ellipses in original).

The committee members' contemporaneous notes, and their declarations in this case, reflect that they believed another one of the candidates, Mark Schwartz, gave a stronger interview performance. For example, committee members Weber and Mero both found that Schwartz gave polished and relevant responses to the interview questions and articulated

5

examples that showed he was a good fit for the leadership role. Committee member Baus wrote in his notes that Schwartz had a "[w]ell rounded background" and had a "good progression of experience and responsibility." *Id.*, ¶ 60. Schwartz's response to the diversity question was also highlighted, with Baus and Mero feeling that his response evinced a willingness to listen to others' viewpoints and a genuine belief that diversity of members and thoughts can contribute to better outcomes. The committee's collective comments on Schwartz stated:

> Mark – seemed to be the right balance and recent experience; polished and factual; could lead; good conflict resolution . . . finding the right balance; doesn't have the experience with the advanced courses; has taught at the basic level; short answers; limited eye contact at times; didn't have any questions for the committee; said the right things; had some good awareness of issues with smaller departments and the needs of volunteers; nice job with the diversity questions; liked his ideas about effective listening skills.

*Id.*, ¶ 58 (ellipsis in original).

After the interviews, each member of the committee ranked the candidates in order of preference, from first to fourth. The one exception was Olson, who ranked only Schwartz (as first overall). The committee members' rankings for Van Ert and Schwartz were:

|  | Committee Member | | | | |
| --- | --- | --- | --- | --- | --- |
| Candidate | Jack Baus | Kasondra Mero | Shelly Olson | Carmen Peterson | Kendra Weber |
| Gerald Van Ert | 2 | 4 | -- | 1/2 | 2 |
| Mark Schwartz | 1 | 1 | 1 | 1/2 | 1 |

*Id.*, ¶ 39.

The members reviewed their comments and rankings and confirmed with Vanasse that she had accurately represented the committee's discussion and evaluation. The committee then recommended a second interview of Schwartz. Following that second interview, Schwartz was hired as the emergency services coordinator.

6

In September 2018, Olson (who was a dean at the college) met with Van Ert and a human resources representative to discuss Van Ert's future at the college. In that meeting, Van Ert was offered a part-time role as a fire services technician and adjunct fire instructor. Van Ert accepted the offer.

In his new role, Van Ert contends that he was required to perform many of his fire safety center coordinator duties while Schwartz, now his supervisor, was learning the emergency services coordinator position. Van Ert contends that he often had to work more than 40 hours per week covering Schwartz's duties, and that the new role resulted in decreased wages, hours, and vacation time. Van Ert also contends that he wasn't paid for overtime he accrued during that period. In February 2020, Van Ert resigned his position as fire services technician at the college but stayed on as an adjunct fire instructor.

In August 2021, Van Ert filed this suit, alleging that the college discriminated against him in violation of the Rehabilitation Act when it rejected him for the emergency services coordinator position and when it placed him in the fire services technician job and required him to continue performing many of his previous duties.

## ANALYSIS

The pertinent part of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability . . . be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a). To prevail on his claim, Van Ert must show that (1) he is disabled within the meaning of the statute; (2) he was otherwise qualified for the job in question; (3) he was the subject of an adverse employment action solely because of his disability; and (4) the

employment program of which the job was a part received federal financial assistance. *Whitaker v. Wis. Dep't of Health Servs.*, 849 F.3d 681, 684 (7th Cir. 2017). For purposes of the college's motion for summary judgment, the parties agree that Van Ert is disabled and that the college receives federal funds. The core issue is whether the college failed to hire Van Ert for the new emergency services coordinator position solely because of his disability.

Van Ert argues that he has proof of disability discrimination under the indirect method and burden-shifting approach set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See* Dkt. 23, at 5–6 (citing *Ghosh v. Ind. Dep't of Envtl. Mgmt.*, 192 F.3d 1087, 1091 (7th Cir. 1999)). Under the indirect method, Van Ert would have to make a prima facie showing that he was rejected for a job and that the person who was promoted in his place had "similar or lesser qualifications for the job." *Ghosh*, 192 F.3d at 1091. If Van Ert makes this showing, the burden shifts to the college to provide a legitimate, non-discriminatory reason for its action, and if the college makes that showing, then the burden shifts again to Van Ert to show that the reason was a pretext for discrimination.

The *McDonnell Douglas* framework can be an efficient way to organize, present, and assess evidence in discrimination case. *Johnson v. Advoc. Health & Hosps. Corp.*, 892 F.3d 887, 894 (7th Cir. 2018). But the Seventh Circuit has encouraged district courts to focus on the central issue, which is whether the evidence as a whole would permit a reasonable factfinder to conclude that the plaintiff's disability (or other protected trait) caused the employer's adverse action. *Monroe v. Ind. Dep't of Transp.*, 871 F.3d 495, 504–05 (7th Cir. 2017). Regardless of the method of presentation, the court will consider the defendant's proffered reasons for its actions, and assess the plaintiff's proffered evidence that those reasons are a pretext for discrimination. *Id.*

Applying these principles to the case at hand, the parties dispute three main issues. First, they disagree on whether the interview committee knew that Van Ert is disabled. If the committee members didn't know that Van Ert had a disability or perceive him as having one, then they couldn't have acted with discriminatory intent when they rejected his candidacy. Second, the parties dispute Van Ert's and Schwartz's qualifications for the emergency services coordinator position. Van Ert says that he was obviously more qualified than Schwartz, showing that the college's real reasons for choosing Schwartz are discriminatory.

As the moving party, the college is entitled to summary judgment if it shows that the material facts are not genuinely disputed and it is entitled to judgment as a matter of law. Put another way, the question is whether a reasonable jury could find for Van Ert on the disputed elements of his claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).[1]

**A. The emergency services coordinator position**

Van Ert contends that he suffered two adverse actions because of his disability. The court begins with the college's decision to choose Scwartz over Van Ert for the emergency services coordinator position.

---

[1] Citing some obsolete Wisconsin caselaw, Van Ert contends that summary judgment is a "drastic remedy." Dkt. 23, at 3. But as the court noted in another case brought by plaintiff's counsel, that is not the view of the United States Supreme Court. *See Van Dien v. Dep't of Health Servs.*, No. 20-cv-252-jdp, 2021 WL 2894090, at *7 n.1 (W.D. Wis. July 9, 2021). Rather, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

**1. The committee's knowledge of Van Ert's disability**

The college contends that none of the committee members knew that Van Ert had a disability, and none perceived him as having one. So, the argument goes, the committee could not have been motivated by any intent to discriminate on the basis of disability.

Van Ert argues that the committee members did know he had a disability because they had seen him with Bonnie at service dog trainings that Van Ert conducted at the school or at other work events. Van Ert also contends that one committee member, Weber, knew about the nature of Van Ert's disability because she wrote the words "lots of trauma" in her notes from Van Ert's interview. Dkt. 28, ¶ 46.

One problem with Van Ert's case is that it's unclear what the precise nature of his disability is. In his submissions to this court, he lists various medical conditions that he suffers from and contends that they substantially limit his walking and hearing. Dkt. 23, at 7. But he didn't mention hearing loss in his 2017 request for reasonable accommodation. He claims that he has a cognitive impairment, but he offers no details on what the impairment is or how it interferes with his major life activities. *See Garg v. Potter*, 521 F.3d 731, 736 (7th Cir. 2008) (noting that to qualify as a disability under the ADA and Rehabilitation Act, a condition must be a "physical or mental impairment that substantially limits a major life activity"). Likewise, Van Ert doesn't describe how other conditions listed in his reasonable accommodation request—including headaches and traumatic brain injuries—affect his life.

The committee members had even less information about Van Ert's disability than has been presented to the court. Van Ert doesn't contend that any of the committee members had seen, or were even aware of, his 2017 reasonable accommodation request. Instead, Van Ert argues that they knew he was disabled because they had seen him with his service dog, who

typically (though not always) wore a service dog vest. But even if committee members had seen him with his service dog, that doesn't establish that they knew she was his service dog. Nor would the committee members know what disability she assisted him with.

Weber's notes in her comments on Van Ert's interview do not demonstrate any awareness of Van Ert's disability. Her cryptic note, "lots of trauma," doesn't clearly indicate that Weber was referring to Van Ert's own personal experiences of trauma. Given Van Ert's work in the emergency services field and the position he was applying for, it's also possible that the comment referred to Van Ert's professional experience dealing with individuals who experienced trauma. But even if the note did refer to Van Ert's own history, that he experienced "lots of trauma" doesn't necessarily imply that Van Ert was disabled due to his trauma; it could be simply a description of his relevant experience in the field.

But on the college's motion for summary judgment, the court must draw reasonable inferences in Van Ert's favor. The court concludes that Van Ert has adduced evidence to raise a genuine dispute about whether the committee knew Van Ert had a disability of some kind. But there is no evidence that the committee knew that Van Ert had any specific disability.

### 2. Van Ert's and Schwartz's qualifications

The parties dispute Van Ert's and Schwartz's relative qualifications. This dispute breaks down into two sub-issues. First, the college contends that Van Ert's interview performance was so bad that it rendered him unqualified for the emergency services coordinator position, thus preventing Van Ert from establishing even a prima facie case. The court is not persuaded. Van Ert had substantial relevant experience, including more than 15 years working in the emergency services field, several degrees in emergency-services related areas, and relevant professional certifications. Dkt. 28, ¶¶ 13–14, 50. The parties don't say how many individuals applied for

11

the position, but that Van Ert was offered an interview suggests he possessed the minimum qualifications. Further, despite Van Ert's lackluster interview performance, three out of the five committee members still ranked him either first or second out of the four candidates. Van Ert may have interviewed poorly, but the evidence shows that he had the basic qualifications for the emergency services coordinator position.

The second sub-issue is which candidate, Van Ert or Schwartz, was more qualified for the position. Van Ert contends that he was more qualified because Schwartz had less formal education (only an associate's degree), less emergency services experience (10 years), and fewer relevant professional certifications. Dkt. 28, ¶ 50. The college contends that Van Ert's bad interview performance showed that he was less qualified to be the emergency services coordinator. Specifically, the college contends that Van Ert's responses and behavior showed that he wasn't an effective listener, didn't communicate in a professional style, and didn't possess a commitment to valuing diversity. Van Ert responds that the committee's proffered reasons for finding him less qualified were pretexts for discrimination.

The evidence shows that both candidates had roughly comparable qualifications for the emergency services coordinator position. Van Ert may have had more formal education and a few more years' experience in emergency services generally, but Schwartz also had a decade of relevant experience, including more recent experience and licensure in emergency medical services. Dkt. 29, ¶ 64. The differences between the candidates here are subtle ones. This is not a case where the employer's discriminatory intent can be inferred from the candidates' formal qualifications alone. "Unless the competing qualifications are so favorable to the plaintiff that there can be no dispute among reasonable persons of impartial judgment that the plaintiff was clearly better qualified for the position at issue, the plaintiff's qualifications alone

do not establish evidence of pretext." *Robertson v. Dep't of Health Servs.*, 949 F.3d 371, 381 (7th Cir. 2020) (cleaned up).

The college has offered plausible reasons for choosing Schwartz over Van Ert. The issue for the court is not whether the college's decision to reject Van Ert was fair or wise, but whether the proffered reasons for doing so were guises for discrimination, that is, lies. *See Boss v. Castro*, 816 F.3d 910, 917 (7th Cir. 2016) ("The federal courts are not a super-personnel department that second-guesses facially legitimate" employer decisions.); *Monroe*, 871 F.3d at 505 ("Pretext involves more than just faulty reasoning or mistaken judgment on the part of the employer; it is [a] lie, specifically a phony reason for some action." (citation omitted)).

Van Ert points to two pieces of evidence from the interview that he contends reveal the committee's discriminatory intent. First, he contends that the references in the committee's comments to his problems "listening" showed discrimination based on Van Ert's hearing loss. And second, he contends that committee member Weber's note that there was a "[p]ause" before Van Ert answered the listening question shows discrimination based on Van Ert's hearing loss and his cognitive impairments. Dkt. 29, ¶ 43. Neither of Van Ert's examples show that the committee's concerns were pretexts for discrimination. As explained above, Van Ert adduces no evidence that the committee members knew the nature of Van Ert's disabilities, including his hearing loss and cognitive impairment. If the committee members didn't know that Van Ert had hearing loss and a cognitive impairment, the committee could not have discriminated against Van Ert on that basis. No reasonable jury could conclude that the committee's concerns about Van Ert's listening skills and delayed response were guises for discrimination on the basis of his poor hearing and some unspecified cognitive impairment.

y
n

But even if the committee members knew the nature of Van Ert's disabilities, Van Ert's claim would still fail. This is because Van Ert has identified no evidence showing that the committee's reasons for rejecting him were pretextual. The committee's comments reflect that they had serious concerns about Van Ert's commitment to valuing diversity and his ability to communicate professionally. Van Ert doesn't dispute that these were important skills for the job, and he doesn't dispute any of the interview comments attributed to him. He doesn't dispute that he called the fire service a "Brotherhood," that he said members of the fire and emergency medical services have "wives," or that he asked female co-workers when they would get "knocked up." He doesn't dispute that he used unprofessional language like "Blah blah blah," or that he twice rebuffed the committee's request that he sit down.

Under the Rehabilitation Act, the plaintiff's disability must be the *sole* reason for the alleged discriminatory action. 29 U.S.C § 794(a); *see also Conners v. Wilkie*, 984 F.3d 1255, 1260 (7th Cir. 2021). No reasonable jury could conclude that Van Ert's disability was the sole reason that the committee chose Schwartz over Van Ert for the emergency services coordinator position.

**B. The fire services technician position**

Van Ert also contends that the college violated the Rehabilitation Act when it "demoted him" into the part-time fire services technician role and required him to perform tasks that fell outside that job's list of duties. Dkt. 28, ¶¶ 55, 58, 64. He contends that the new job had lower wages and fewer benefits than his previous position, and that he wasn't compensated for overtime that he worked. *Id.*, ¶¶ 55–56, 62. Again, the question is not whether Van Ert was treated well or fairly in the new position; the question is whether he was treated as he was solely because of his disability. Van Ert adduces no new evidence of disability discrimination

specific to the new position, so much of the analysis in the previous section applies here as well. No reasonable jury could find that disability discrimination was the sole reason for the way he was treated.

This part of Van Ert's Rehabilitation Act claim has an additional problem: his new position was not an adverse employment action. Van Ert wasn't demoted, he was offered an alternative position after his original job was eliminated. Van Ert lost his job when the school restructured its emergency services program (a decision he doesn't challenge as discriminatory). After Van Ert was turned down for the emergency services coordinator position, the college wasn't obligated to continue his employment and could have let him go. But instead, the school offered Van Ert a new position. Given that Van Ert's only alternative was to leave the school entirely, the court fails to see how the college offering him the new job constituted an adverse employment action. *See, e.g.*, *Franzoni v. Hartmarx Corp.*, No. 99-C-4898, 2001 WL 243394, at *7 (N.D. Ill. Mar. 12, 2001) (offer of alternative employment after termination is not an adverse employment action).

ORDER

IT IS ORDERED that:

1. Defendant Chippewa Valley Technical College's motion for summary judgment, Dkt. 11, is GRANTED.

2. The clerk of court is directed to enter judgment in defendant's favor and close this case.

Entered October 31, 2022.

                                        BY THE COURT:

                                        /s/

                                        _____
                                        JAMES D. PETERSON
                                        District Judge